# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE F. RATHY, SR.,                          )
                                               )     Civil Action No. 13 – 72
                           Plaintiff,          )
                                               )     District Judge Cathy Bissoon
            v.                                 )     Chief Magistrate Judge Lisa Pupo Lenihan
                                               )
JOHN E. WETZEL, *Secretary of                  )
Corrections*; GRAVES, *Unit Manager*;          )     ECF Nos. 57, 59, 64
AL HARVEY, *Correction                         )
Officers/Maintenance Supervisor*;              )
COMMONWEALTH OF                                )
PENNSYLVAINA DEPARTMENT                         )
OF OCRRECTION; THE CENTRAL                      )
OFFICE INMATE DISABILITY                        )
ACCOMMODATION COMMITTEE                         )
(COIDAC); BRIAN H. THOMPSON,                    )
*The Superintendent of SCI Mercer*;            )
KIMBERLY BOAL, *The Corrections                 )
Health Care Administrator (CHCA)*;             )
DR. SCOTT MORGAN, M.D.; DR. Y.                  )
ALEX SUVOROV, *Psychiatrist at SCI              )
Mercer*; DR. STUART STEINBERG,                 )
LPN; BURT BROCKLEHURST; *Unit                   )
Manager*; JAMES OPPMEN,                         )
Principal; COLLEEN MOJOCK,                      )
*Librarian Supervisor*; LINDA                   )
DEFOREST, *Assistant Librarian*,               )
                                               )
                           Defendants.          )

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

For the following reasons, it is respectfully recommended that the Motion to Dismiss

filed by the DOC Defendants (ECF No. 64) be granted and that the Motions to Dismiss, that

have been converted into Motions for Summary Judgment, filed by Dr. Y. Alex Suvorov (ECF

No. 57) and Dr. Scott Morgan (ECF No. 59) also be granted. It is further recommended that Defendants Grave and Al Harvey be dismissed for failure to prosecute and for Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), that leave to file a Fourth Amended Complaint be denied, and that this case be closed.

## II. REPORT

### A. Background

Plaintiff George F. Rathy, Sr. ("Plaintiff") is a former state prisoner who initiated this civil rights lawsuit while he was an inmate at the State Correctional Institution at Mercer ("SCI-Mercer"), where he was housed from March 2008 until his release in December 2013.[1] He asserts six "Counts" in his Third Amended Complaint, alleging that prison officials violated his constitutional rights in a litany of manners. A factual summary of each Count is as follows:

#### 1. Shy Bladder Syndrome (Count One)

Plaintiff alleges that he suffers from Paruresis, otherwise known as "Shy Bladder Syndrome," and is unable to urinate in the presence of others. He states that in order to urinate when someone is nearby he has to take deep breaths and push as hard as he can and repeat this process over and over again. He alleges that this strain causes him to have severe headaches.

His claims arise out of the fact that prison officials at SCI-Mercer would not house him in a single/handicap cell despite the fact that, according to Plaintiff, Shy Bladder Syndrome is a recognized disability under the Americans with Disabilities Act ("ADA"). By way of an Inmate Disability Accommodation Request filed on April 1, 2012, after the initiation of this lawsuit, Plaintiff requested but was denied a single/handicap cell. He was told by the DOC Central

---

[1] The DOC Defendants state that Plaintiff has been housed in different institutions as of March 2008, including SCI-Mercer.

Office committee that his medical condition "did not rise to the level of a disability" but that SCI-Mercer was offering him medical services and accommodations related to his condition for non ADA reasons. While his request was pending, another inmate (Wagner) was given the only single/handicap cell in Plaintiff's block. Plaintiff states that this was not fair because the inmate did not have a disability.

Doctors Suvorov and Steinberg told Plaintiff that they would not order the DOC to put him in a single/handicap cell but they discussed Plaintiff's medical condition with him and provided guidance on how to deal with it in the prison setting, including giving Plaintiff a book about Shy Bladder Syndrome.

Plaintiff states that he was able to urinate at least five days a week in an enclosed bathroom that was in the library building where he worked but was unable to do so once he was fired from his library job on November 21, 2012.

### 2. Cataract Surgery (Count Two)

Plaintiff claims that the DOC unnecessarily delayed the removal of a cataract in his left eye because he still had what they considered "functional vision" in his right eye.[2] He states that the surgery should have occurred in 2012 but that it did not happen until July 2013. In connection with this Count, Plaintiff also claims that he was not permitted to keep a small purple Bausch and Lomb nylon bag that was provided to him by Dr. Sala at the Erie Eye Clinic after his surgery. Plaintiff claims that there was no reason why he should not have been able to keep the bag with him in his cell because other inmates were allowed to keep the same or similar bags with them in their cells. He also states that he was not given the option of sending the bag home if the DOC considered it "contraband". The DOC's response was that it was not "medically

---

[2] While in the DOC, Plaintiff had cataract surgery on his right eye in 2009.

necessary" for Plaintiff to keep the bag in his cell because the bag's sole purpose was to hold the prescriptions and the tape for his eye.

3. <u>Library Job (Count Three)</u>

Plaintiff states that he was initially hired to work in the library in April 2011. He started at the circulation desk and had to "earn" his position as a Legal Aide about a year later. The Third Amended Complaint alleges a litany of events, poor evaluations, issues with other inmates, etc., which culminated in Plaintiff being moved back to the circulation desk in July 2012. Plaintiff claims that he was then fired on November 14, 2012, after an incident with another inmate (Culver). At a subsequent staffing on November 21, 2012, it was determined by vote that Plaintiff would be removed from his library position. Plaintiff alleges that he was not allowed to call witnesses or present any evidence at the staffing to show that the other inmate was at fault. He also claims that he was wrongfully terminated from his job because it was done by someone who did not have the authority to do so.

4. <u>Library Closures (Count Four)</u>

Plaintiff claims that the library was closed from December 23, 2012, through January 1, 2013, and that this caused him to miss five scheduled law library sessions. He also missed three scheduled sessions due to library closures in April, as well as two in May, one in July and two in August 2013. Plaintiff states that he was doing legal work on several cases during this time period but he does not allege that he suffered any prejudice as a result of the library closures.

5. <u>Wages, Costs and Postage (Counts Five and Six)</u>

Plaintiff claims that he is owed money in lost wages from November 15, 2012, through November 21, 2012, due to his wrongful termination from his library job by someone other than his supervisor. He also claims that he should be reimbursed for postage expenses he incurred by

having to file grievances related to the wrongful termination, and $18.84 in postage and copying expenses he incurred during the months of January and February 2013, which he claims should not have been charged to him due to his indigency.

## B. Standard of Review

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

Plaintiff is proceeding *pro se* and therefore this Court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs,

165 F.3d 244, 247-48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)

("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint

sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293

F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation

to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A

Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th

Cir. 1996).

**C. Discussion**

The Third Amended Complaint is 37 pages of single space type. While Plaintiff has

numbered his paragraphs, there seems to be no apparent order, chronological or otherwise, and

his allegations are repetitive and claims difficult to decipher. Liberally construed the

undersigned believes that Plaintiff asserts the following legal claims. However, first it must be

noted that any claim for injunctive relief is now moot because Plaintiff is no longer incarcerated.

See Candelaria v. Coughlin, 787 F. Supp. 368, 378 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir.

1992). Accordingly, the Court should dismiss Plaintiff's claims for injunctive relief.

1. ADA and Rehabilitation Act Claims

Plaintiff alleges that his medical condition, Shy Bladder Syndrome, is a recognized

disability under the ADA and that defendant should have accommodated his disability by

providing him a single/handicap cell. Title II of the ADA provides that "no qualified individual

with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to the state prisons, Pa.

Dep't of Corr. v. Yeskey, 524 U.S. 206, 209–10 (1998), and authorizes private lawsuits for both

money damages and injunctive relief against public entities that violate its provisions. 42 U.S.C. § 12133. Under Title II, the failure of a public entity to provide disabled persons with reasonable modifications constitutes discrimination within the meaning of the Act. See, e.g., Townsend v. Quasim, 328 F.3d 511, 517 (9th Cir. 2003); Muhammad v. Court of Common Pleas of Allegheny County, Pa, Civil No. 2:09–1255, 2011 WL 4368394, at *7 (W.D. Pa. Aug. 25, 2011). See also 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

First, the individual defendants are not liable for damages under Title II of the ADA because they are not "public entities". See Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). Furthermore, the Pennsylvania Department of Corrections and the individual defendants in their official capacities are entitled to Eleventh Amendment immunity. However, the Supreme Court of the United States has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution. United States v. Georgia, 546 U.S. 151, 159 (2006). In order for this to happen, a plaintiff must first be able to state a claim under the ADA by showing that (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.[3] Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 550 (3d Cir. 2007).

A disability, as defined by the ADA, is "a physical or mental impairment that substantially limits one or more major life activities of such individual; [or] a record of such an

---

[3] The Rehabilitation Act and the ADA are analyzed under the same standards. Bowers v. NCAA, 475 F.3d 524, 535 n.12 (3d Cir. 2007).

impairment." 42 U.S.C. § 12102(1). In determining whether a disability has been established under the ADA, the Supreme Court created a "demanding standard" in <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 197-98 (2002), by strictly interpreting this definition to require that to have a disability, one "must have an impairment that *prevents or severely restricts* the individual from doing activities that are of central importance to most people's daily lives." (emphasis added).

The undersigned was unable to uncover a case where Shy Bladder Syndrome has been expressly held to be a disability under the ADA. In the most on point case, <u>Kinneary v. City of New York</u>, 601 F.3d 151, 157 n.3 (2d Cir. 2010), the Second Circuit Court of Appeals did not resolve this question. However, this has no effect on the matter at hand – whether Plaintiff has alleged a disability under the ADA. It is also irrelevant whether Plaintiff was actually diagnosed as having Shy Bladder Syndrome because whether an individual has a disability depends on the effect of the impairment, not the diagnosis. <u>See</u> <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 197-98 (2002) (merely having a medical impairment does not make one disabled for purposes of the ADA).

In <u>Heiko v. Colombo Savings Bank</u>, 434 F.3d 249, 255 (4th Cir. 2006), the Fourth Circuit Court of Appeals determined that the "elimination of bodily waste" was a major life activity. Because urination is an elimination of bodily waste the undersigned will assume for purposes of the ADA that Plaintiff has sufficiently alleged that his condition/impairment affects a major life activity. However, whether Plaintiff's condition "substantially limits" his ability to perform this major life activity is a separate question.

As the Supreme Court explained in <u>Toyota Motor Mfg.</u>, 534 U.S. at 196,

> In determining whether an individual is substantially limited in a major life activity . . . the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impact.

(internal quotation marks omitted). In this regard, as the Supreme Court explained in an earlier decision, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether a person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999).

Here, the undersigned believes that Plaintiff has not sufficiently alleged that he was substantially limited in his ability to urinate and therefore he has not adequately pled that he has a disability under the ADA. Plaintiff claims that his impairment only makes it difficult for him to urinate in front of others. It does not prevent him from urinating in general or urinating in a bathroom when no one was around. In fact, Plaintiff said that he has no problems urinating while alone in his cell and he was able to use the bathroom in the library building at least five days a week while he held that job.[4] The Fourth Circuit has held that "sporadic or otherwise temporary impairments do not qualify as substantial limitations." Heiko, 434 F.3d at 257.

Nevertheless, even if Plaintiff has sufficiently alleged a disability under the ADA, he has failed to identify any discrimination he has suffered, or program, service, activity or benefit from which he has been excluded or which he has been denied "because of" his alleged disability. Plaintiff's only complaint is that he was not given the one accommodation that he requested – a single/handicap cell. However, he admits that prison officials at SCI-Mercer made other

---

[4] It appears that Plaintiff's real reason for wanting a single cell is so that he could get a "good night's sleep" because his cellmate was a kitchen worker who had to get up for work at 4:00 a.m.

accommodations. They provided him with medical and psychiatric services for his condition and moved him for non ADA reasons so that it would be easier for him to access a semi-private bathroom. Plaintiff's disagreement with the prison's medical decision that he did not require a single cell does not fall within the scope of the ADA. *See, e.g.*, Isley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination."); Thomas v. Pa. Dep't of Corr., 615 F. Supp. 2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA). Therefore, it is the undersigned's opinion that Plaintiff has failed to sufficiently state a claim for a violation of Title II of the ADA or the Rehabilitation Act.

2. Eighth Amendment Deliberate Indifference to Medical Needs Claims

Plaintiff alleges that defendants were deliberately indifferent to his medical and health needs in connection with his Shy Bladder Syndrome and cataract surgery. In order to state such a claim, a plaintiff must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486

U.S. 1006 (1988).  The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

First, Plaintiff alleges that defendants exhibited deliberate indifference to his medical needs by denying him a single/handicap cell.  He states that he explained to the prison doctors and officials that he suffered from Shy Bladder Syndrome and that the only way he can pass urine in the presence of someone else is to strain.  According to Plaintiff, the doctors refused to put their "necks on the chopping blocks" by ordering the DOC to put Plaintiff in a single/handicap cell.  However, he admits that they provided other forms of treatment for his condition, including psychiatric care, providing him a book about Shy Bladder Syndrome, and offering to catheterize him.  These allegations belie his claim that they were deliberately indifferent to his needs.  Plaintiff simply wanted one thing and it appears that a significant motivating factor for Plaintiff's lawsuit is not so much that he was denied the single/handicap cell but that it was given to another inmate who Plaintiff didn't think deserved it as much as he did.  The "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice."  Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  According to the DOC, it was not medically necessary that Plaintiff be in a single/handicap cell.  As stated above, Plaintiff was able to empty his bladder at certain times during the day and whenever nobody was around.  His allegations simply do not demonstrate actions constituting "an unnecessary and wanton infliction of pain."  Gamble, 429 U.S. at 105-06.  Therefore, his Eighth Amendment claim in relation to his Shy Bladder Syndrome should be dismissed.

Plaintiff's claim with respect to the cataract surgery is that the DOC unnecessarily delayed in authorizing it because he did not qualify since he still had functional vision in his right eye. Importantly, Plaintiff had the surgery and he does not allege that he suffered an irreparable injury by having to wait until it was authorized. Instead, he disagrees with the DOC's decision that he did not qualify. Plaintiff alleges that he did not have "functional vision" in his right eye because his lens in his right eye was scratched and this caused him to see double. In this situation, it is clear from the complaint that the DOC did not delay necessary medical treatment, and certainly did not do it for non-medical reasons. It is readily apparent that Plaintiff simply disagrees with a medical judgment call that was made and this is not enough to state a claim under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Finally, a significant portion of Plaintiff's Third Amended Complaint is dedicated to bitterly complaining about the small purple Bausch and Lomb bag that he was not allowed to keep with him in his cell. These allegations certainly do not state a claim.

3. Claims related to loss of prison job

Plaintiff asserts a number of claims related to the loss of his prison job. For example, he alleges that defendants were deliberately indifferent to his health needs because they removed him from his job while knowing that the restroom in the library building was the only place that he could urinate; they were deliberately indifferent to his financial needs because the loss of his job caused him to become indigent; they did not give him positive reinforcement or explain what he needed to do in order to improve at his job; they did not attempt to resolve any problems with him before he was fired; he was fired by someone who did not have authority to do so; and he was denied due process in his staffing hearing because he was not allowed to present evidence or witness testimony to support his position that he was not at fault for the incident that resulted in

his firing. These allegations, and all others related to the loss of Plaintiff's job, fail to state a claim upon which relief may be granted because inmates have no constitutionally protectable interest in prison employment. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989) (recognizing that inmates have no constitutional right to be assigned to a particular job; an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the Fourteenth Amendment); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); see also Fidtler v. Pa. Dept. of Corrections, 55 F. App'x 33, 35 (3d Cir. 2002) ("we have held that a state inmate does not have a liberty or property interest in prison employment").

Furthermore, the loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment under the Eighth Amendment. See Clark v. Maryland Dept. of Pub. Safety and Corr. Serv., 316 F. App'x 279, 281 (4th Cir. 2009) ("[A]s prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation."); Ivey v. Wilson, 832 F.2d 850, 955 (6th Cir. 1987); Fox v. Taylor, No. 04-1257, 2005 U.S. Dist. LEXIS 21045 (D. Del. Sept. 27, 2005) (no Eighth Amendment claim for loss of prison job); Roach v. Kligman, 412 F. Supp. 521, 527 (E.D. Pa. 1976) (no Eighth Amendment claim for failure to provide higher wages in prison job so as to afford personal hygiene products and legal materials); see also Rhodes, 452 U.S. at 347-49 (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, must less punishments that inflict unnecessary and wanton pain)). Consequently, Plaintiff's claims stemming from the loss of his job and respective wages should be dismissed.

4. Claims related to library closure

Plaintiff alleges that it is DOC policy for the library to be open seven days a week and that the DOC violated this policy when it closed the library, which caused him to miss a number of scheduled law library appointments and prevented him from conducting legal research and preparing documents. His claims relating to violations of DOC policy are discussed *infra*, but it appears that Plaintiff also alleges that the library closures violated of his right to access the courts under the First Amendment.

Under the First Amendment, prisoners have a right of access to the courts. See Lewis v. Casey, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. See id. at 351-53. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. See Christopher v. Harbury, 536 U.S. 403, 415 (2003); see also Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).

Plaintiff does not allege that he suffered an actual injury as a result of the library closures. Instead, he claims that this caused him to miss his scheduled library appointments, which prevented him from doing legal research. He identifies three cases that he was actively litigating at the time of the library closures. The first of the three cases is his federal habeas corpus case, which was filed in this Court at CA No. 09-1370. A review of the docket reflects that Plaintiff's habeas petition was denied by Order dated December 7, 2012, prior to the library closures that he has identified. Therefore, Plaintiff could not have suffered any prejudice with respect to the library closures and his habeas case. Furthermore, the docket reflects that Plaintiff filed numerous documents, including a very lengthy brief in support of his petition and a response to the answer filed by the Respondents.

The second of the three cases is the appeal of the denial of his federal habeas petition, which was filed in the Third Circuit Court of Appeals at CA No. 13-1343. By Order dated June 13, 2013, the Third Circuit denied Plaintiff a certificate of appealability "for essentially the reasons set forth in [the District Court's] December 7, 2012 opinion and order." Despite the fact that Plaintiff's appeal was pending during the alleged library closures, the docket for that case reflects numerous filings by Plaintiff during that time, including a 38 page motion for a certificate of appealability filed on March 4, 2013, and a 25 page supplemental motion for a certificate of appealability filed on May 28, 2014. The docket also reflects that Plaintiff never complained to the court that he was unable to litigate his appeal due to the library closures. Given these circumstances, the undersigned finds that Plaintiff did not suffer an actual injury due to the library closures in relation to that case.

Finally, the third case he identifies is the instant case, which was not initiated until January 15, 2013, at which time the library was opened. During the course of this litigation Plaintiff has never complained about not being able to conduct legal research due to library closings. However, the Court has granted every motion for extension of time that he has filed. Plaintiff has even amended his complaint three times, the Third Amended Complaint being filed on February 3, 2014, when he was already released from prison. Accordingly, Plaintiff has failed to state an access to courts violation claim.

5. Claims related to copying and postage expenses

Plaintiff alleges that he is entitled to reimbursement of expenses that he incurred while grieving his wrongful termination. He also alleges that he is entitled to reimbursement of funds that was charged to his prisoner account when he was indigent. To the extent that Plaintiff's

claims are based on having his property taken without due process, Plaintiff has failed to state a claim of constitutional dimensions.

While it is true that inmates have a protected property interest in the funds in their prison accounts, Reynolds v. Wager, 128 F.3d 166, 179 (3d Cir. 1997), the Supreme Court has held that random and unauthorized deprivation of a prisoner's property does not violate due process so long as post-deprivation remedies are available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, Plaintiff had an adequate post-deprivation remedy available to him through the prison's grievance procedure and through a tort action in state court. See Jerry v. Beard, 2011 WL 989856, at *2 n.1 (3d Cir. 2011) ("[T]he post-deprivation remedies available to Jerry under the prison grievance procedure and Pennsylvania law constitute adequate process.") (citing Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008)). See also Payton v. Horn, 49 F. Supp. 2d 791, 795 (E.D. Pa. 1999) (holding that Pennsylvania tort law offered a remedy for prison official's unlawful deprivation of an inmate's property and therefore inmate failed to state a claim that his constitutional rights were violated), overruled on other grounds, Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002); Reid v. Seville, No. 96-2577, 1996 U.S. Dist. LEXIS 10319, 1996 WL 421901, *3 (E.D. Pa. July 19, 1996) (same); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Mrs. Brown, No. 95-7867, 1996 U.S. Dist. LEXIS 15642, 1996 WL 608473, *2 (E.D. Pa. Oct. 24, 1996) (holding that both the DOC grievance procedure and tort suit in state court provide adequate post deprivation remedies).

To the extent Plaintiff is attempting to make a substantive due process claim, again, his allegations fail to state a claim because the copying and postage expenses he alleges were wrongfully charged to him simply does not shock this Court's conscience. See, e.g., United

Artists Theatre Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392, 399-400 (3d Cir. 2003) ("our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").  See also Moore v. Gluckstern, 548 F. Supp. 165, 167 (D. Md. 1982) ("At worst, plaintiff alleges that the items were stolen by the guards.  While such action by prison guards, if proven, would clearly be wrongful, there is nothing about the alleged incidents that could conceivably 'shock[] the conscience' of the court.  Therefore, the complaint cannot be read as alleging a violation of substantive due process rights.").

Accordingly, any procedural and substantive due process claims raised by Plaintiff in relation to the alleged wrongful charges and expenses should be dismissed.

6.  Claims for alleged violations of DOC policy

Plaintiff alleges liability based on violations of prison policies.  However, state agency guidelines do not, in and of themselves, create a right, and do not have the force of law.  *See* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); see also Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation).  As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation.  Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)).  *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the

level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Consequently, defendants cannot be legally liable simply for violating a DOC prison policy.

### 7. Exhaustion of Administrative Remedies

Doctors Suvorov and Morgan move to dismiss Plaintiff's claims against them on the basis that Plaintiff did not exhaust his administrative remedies pursuant to 42 U.S.C. § 1997(e). The Court converted both of their Motions into Motions for Summary Judgment because the Doctors attached declarations and Plaintiff's grievance record as exhibits in support of their Motions.[5]

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an

---

[5] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court generally should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Berry v. Klem, 283 F. App'x 1, 3 (3d Cir. 2008) (quoting Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004). If other matters are considered by the court, a motion to dismiss should be converted to a motion for summary judgment. Berry, 283 F. App'x at 3 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993)); see also Fed. R. Civ. P. 12(d). "Reliance on declarations from prison officials or Corrections Department administrators requires conversion." Berry, 283 F. App'x at 3 (citing Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000)); see also Goodson v. Maggi, No. 08-44, 2010 U.S. Dist. LEXIS 26805, 2010 WL 1052963, at *1 (W.D. Pa. Feb. 24, 2010) (Declaration supporting motion to dismiss on ground that plaintiff had not exhausted claim as required by the Prison Litigation Reform Act required conversion).

Both defendants argue that the defense of failure to exhaust is an affirmative defense that may be brought in a motion to dismiss and that Plaintiff's grievance records are considered indisputably authentic documents which the court may consider without converting the motion into one for summary judgment. The undersigned recognizes that the law on this issue is unclear, but it appears that the only time it is not necessary to convert is when defendants submit only the grievances that a plaintiff has referenced in his complaint but did not attach to the complaint himself. See Spruill, supra, (noting that the defendants attached to their motion to dismiss the grievances and related appeals that the plaintiff had referenced in his complaint, and, although their motion should have been captioned as a motion for judgment on the pleadings, the district court was able to consider the grievances without converting the defendants' motion into a motion for summary judgment.)

action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution.[6] Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

The undersigned has reviewed the entirety of Plaintiff's grievance record, which consists of 14 grievances, and finds that Plaintiff did not properly exhaust his claims against Doctors Suvorov and Morgan. See ECF Nos. 58, 60 (listing, summarizing and providing the disposition of each of Plaintiff's grievances.) However, even if Plaintiff had properly exhausted, he has failed to state a claim against these two doctors for the reasons already stated.

8. Defendants Graves and Al Harvey

---

[6] The policy was last amended on December 1, 2010. The previous version of the policy only allowed ten working days to appeal an adverse initial review decision to the facility manager.

According to the docket, defendants Graves and Al Harvey have not been served with Plaintiff's Third Amended Complaint. Under the Federal Rules of Civil Procedure, if a service of summons and complaint is not made upon a defendant within 120 days of filing of the complaint, the court may dismiss the complaint without prejudice as to that defendant. See Fed.R.Civ.P. 4(m). The Third Amended Complaint in this matter was filed on February 3, 2014, well over 120 days ago. When there has been a failure to timely serve a complaint upon a defendant as contemplated under Federal Rule of Civil Procedure 4(m), a court, after giving the plaintiff appropriate notice, may dismiss the complaint for failure to comply with Rule 4(m) and for failure to prosecute under Federal Rule of Civil Procedure 41(b). See Liu v. Oriental Buffett, 134 F. App'x 544, 546-47 (3d Cir. 2005); Gebhardt v. Borough of Island Heights, 2007 U.S. Dist. LEXIS 90119, 2007 WL 4355465, at *1 (D. N.J. Dec. 7, 2007).

Plaintiff bears the responsibility of prosecuting his case with due diligence and he has not provided the Court with service information for defendants Graves and Al Harvey. For this reason, it is recommended that these two defendants be dismissed at this time; however, it is also recommended that they be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as Plaintiff has failed to state a claim against them upon which relief can be granted. Aside from identifying them as defendants in his Third Amended Complaint, Plaintiff does not refer to them in the body of his pleading. There appears to be no single allegation directed at either of them.

9. Amendment of Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing, irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that

where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).  We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile.  A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims for which relief may be granted.

As a final note, it appears that Plaintiff has abandoned his case.  He was released from prison in December 2013, and apart from his Third Amended Complaint, he has filed nothing since that time.  He did not respond to any of the three motions before the Court or communicate with the Court in any way over the last six months.  Therefore, it is likely that Plaintiff no longer wishes to prosecute this action.

## III.  <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by the DOC Defendants (ECF No. 64) be granted and that the Motions to Dismiss, that have been converted into Motions for Summary Judgment, filed by Dr. Y. Alex Suvorov (ECF No. 57) and Dr. Scott Morgan (ECF No. 59) also be granted.  It is further recommended that Defendants Grave and Al Harvey be dismissed for failure to prosecute and for Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), that leave to file a Fourth Amended Complaint be denied, and that this case be closed.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the

date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated:  July 28, 2014

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  George F. Rathy, Sr.
     General Delivery
     141 Summer Drive
     Karns City, PA  16041
     *(Via First Class Mail)*